# IN THE OREGON TAX COURT

James R. and Anne E. BROWN
*v.*
DEPARTMENT OF REVENUE
(TC 2686)

Joseph Wetzel, Wetzel & DeFrang, Portland, represented plaintiffs.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision rendered for defendant July 25, 1988.

**CARL N. BYERS, Judge.**

Plaintiffs appeal from assessments by defendant for omitted income for the years 1979 and 1980. The assessments resulted from an audit by the Internal Revenue Service. Plaintiffs maintain that defendant erred in its assessments because it failed to look behind the federal audit report in order to determine whether plaintiffs are liable to Oregon. Due to the

nature of the questions involved, it is necessary for the court to review in detail the facts leading up to 1979 and 1980.[1]

James Brown ("James") testified that from 1954 to 1974 he was employed in Los Angeles, California, in the aerospace and defense industries. In 1974, he left that work to purchase and operate a car upholstery business. He also engaged in the business of buying neglected houses, fixing them up and selling them for a profit. However, neither of these businesses were as successful as the massage parlor business which he commenced operating in 1974. The massage parlor business was so successful that in three years he had expanded his interest to seven locations and produced a cash flow which enabled him to accumulate over $200,000 in cash. It appears that the reason the business was so successful was that something more than just massages was offered. James admitted that he was aware of this when he began the business, which helps explain why he pled guilty to charges of pimping and pandering in late 1976. James also admitted that he kept his illicit profits in a safe in his house rather than in a bank in order to avoid paying income taxes thereon.

After James was released from jail in California, he obtained consent from the authorities to move to Oregon. Oregon correctional authorities agreed to provide the necessary probation supervision and in February 1977 plaintiffs moved to Medford. He claims that he brought with him over $200,000 in cash from the massage parlor business as well as $66,000 from the sale of a house. In Medford, James resumed investing in houses that needed fixing up and also became interested in the mini-warehouse business. In 1979, he met Harry O'Brien, whom he had known in California, and the two agreed to be partners in the construction and operation of a mini-warehouse. In September 1979, Harry agreed to obtain two slot machines from Las Vegas, Nevada, for James. James testified that he intended to use them in his home. Harry was to drive to Reno where he would pick up a U-Haul trailer containing the slot machines, which were being brought to Reno from Las Vegas. Harry also agreed to purchase an ounce of cocaine for James while in Reno. However, at the last

---

[1] The business activities and events related herein pertain solely to James Brown. So far as the record indicates, Anne Brown is involved only by virtue of executing joint income tax returns with her husband James.

minute Harry's wife was unable to go and James agreed to accompany him to Reno.

In Reno, the two met with Clifford Doyle Lee whom they had both known previously in Los Angeles. The three then went to a parking lot to switch the trailer with the slot machines from Lee's car to Harry's. James also purchased an ounce of cocaine from Lee. While in this process, they were pounced on by numerous drug enforcement agents and arrested. Despite James' claim of innocence, he was charged with interstate travel in aid of racketeering and distribution of amphetamines. It turned out that there was over 10 pounds of drugs in Lee's car which the agents believed James and Harry sold to Lee in exchange for the slot machines, which were stolen, and a large amount of cash.

After a trial in January of 1980, James was found guilty by a jury on all charges relating to the amphetamines and sentenced to prison. He remained in jail until May of 1980, when he was released on bond pending appeal. One of the conditions for his release required him to personally sign a police log sheet every day, which he did for two and one-half years. Upon his release pending appeal, he began operating the mini-warehouse business, construction of which had been completed by his family while he was in jail. He eventually lost on appeal and served his sentence in a federal prison in Texas.

Sometime in 1979, the IRS contacted James relative to an audit of his 1978 or 1979 federal returns. At the initial meeting with the two IRS agents, James realized it involved investigation for possible criminal fraud or evasion under the Internal Revenue Code. He thereupon terminated the meeting and conducted all further negotiations through his attorney. The IRS auditor proceeded to do a net worth audit, which compares reported or discovered income with expenses. The auditor concluded that plaintiffs had omitted approximately $296,000 of income. James testified that by compromise agreement, the IRS auditor allocated $235,000 of the omitted income to 1980 because plaintiffs had not yet filed their 1980 return and they could, by reporting it on that return, avoid fraud penalties and interest. The other $60,000 was treated as a deficiency for 1979. Plaintiffs reported the $235,000 on their 1980 federal return but showed it as "forgiveness of loan."

Plaintiffs' version of the facts have been set out in detail to enable the reader to understand plaintiff's major contention, which is: The omitted $296,000 discovered by the IRS was not earned or received in Oregon and, therefore, is not taxable by Oregon. Plaintiffs contend that the money was earned and received by James in California before they moved to Oregon. If those are the facts, plaintiffs are correct and the assessments in question must be cancelled.

It is appropriate to comment on James' credibility, which is crucial to his case. His admitted course of conduct in California involved deceit as to his massage parlor business and evasion of income taxes. While residing in Oregon, he was convicted by a jury of dealing in amphetamines illegally. Although he appeared candid in his answers and testimony, he left the court unconvinced of critical points. For example, James contends that he did not earn the $296,000 in Oregon yet he did not tell the IRS agent that he earned it in California. Rather, he testified that he lied to the IRS agent and told him that it was from the forgiveness of a loan. He also testified that he had received approximately $85,000 from the sale of a house in California in 1979. This income was not reported by plaintiffs on their 1979 income tax return.

There are some facts which tend to support plaintiffs' position. The net worth audit performed by the IRS covered the years 1977 through 1979 and showed that expenses exceeded income during that period by $353,202, yet apparently the IRS allowed plaintiffs to report $235,000 of the $296,000 James agreed was owing in 1980. Certainly any income omitted in prior years wasn't earned in 1980. It seems unlikely that James, who was incarcerated for almost half of 1980 and closely watched the rest of that year, could have earned $235,000 in 1980. Also, as counsel for plaintiff so astutely pointed out, the federal net worth audit, at least as shown on page 11 of Exhibit B, does not appear to meet the standards required by the courts to establish omitted income by that method. *Holland v. United States*, 348 US 121, 75 S Ct 127, 99 L Ed 150 (1954).

These observations in plaintiffs' favor, however, do not resolve this dispute. Despite plaintiffs' efforts to shift the burden of proof to defendant, the initial burden of persuasion remains with plaintiffs. ORS 305.427. During the years in question, ORS 316.048 provided:

"The entire taxable income of a resident of this state is his federal taxable income as defined in the laws of the United States, with the modifications, additions and subtractions provided in this chapter."

Plaintiffs filed their 1980 federal income tax return showing $235,000 as "forgiveness of loan." Plaintiffs signed the federal return on the following written condition:

"Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete."

Plaintiffs initially did not file a 1980 Oregon income tax return. However, through an information matching program, the Oregon auditor discovered information which led him to believe that plaintiffs should have filed a 1980 return. The auditor testified that he issued several notices in 1982 to plaintiffs to file an Oregon income tax return for 1980, but received no response. In May 1982, plaintiffs' CPA called the auditor and asked for an extension of time to file. Plaintiffs filed their 1980 Oregon income tax return in September of 1982. That return shows $235,000 as a subtraction from federal income. The return was accompanied by a statement entitled "Explanation of Other Subtractions" and stated:

"Taxpayer was audited by Internal Revenue in 1980. As compromise for unreported income in prior years, taxpayer included income item of $235,000, to report income unreported in years prior to Oregon residence. Taxpayer agreed to reporting of income in 1980 to minimize interest and penalties. Amounts of unreported income had previously been compromised with the State of California."[2]

What this case comes down to is this: Plaintiffs reported $235,000 on their federal return and now ask this court to find that no such income was received. The proof they offer is James' testimony describing his activities from 1974 to 1980. Needless to say, his admitted criminal convictions and attempts to evade income taxation do not engender strong reliance on his testimony. Plaintiffs' seek to avoid taxation in Oregon on the grounds that the income in question was earned

---

[2] Although the statement indicates it is for the year ended 12-31-81, this appears to be a mere typographical error.

and received in California prior to coming to Oregon in February 1977. Plaintiffs contend that the income which Oregon now seeks to tax was taxed by California. Plaintiffs however, failed to provide any documentary evidence of the audit conducted by California or of the resulting assessments. Defendant introduced the only written evidence as to any California income taxes, which was simply a copy of a stipulation as to the amount of taxes owing and the dismissal of plaintiffs' appeal to the California State Board of Equalization. Surely plaintiffs could have produced written documents indicating the amounts of income involved and other such details as would demonstrate that the California audit did in fact pertain to omitted income of approximately $296,000. In the absence of such evidence, the court has no way of knowing whether the taxes were for omitted income or from other adjustments (such as disallowed deductions).

Plaintiffs maintain that the $235,000 reported on their federal return for 1980 was the result of a compromise agreement. Yet plaintiffs failed to furnish either the defendant or this court with a copy of any compromise agreement.[3] There is no evidence, other than James' word, to support plaintiffs' contention that the federal audit concerned years earlier than 1977. All of the other evidence indicates that the earliest year audited by the IRS was 1977. Consequently, it would seem more probable that the income was earned after plaintiffs moved to Oregon. Despite James' claim of innocence, his conviction for drug dealing approximately three years after he moved to Oregon also tends to indicate that the unreported income was earned while in Oregon.

Contrary to plaintiffs' contentions, this court is not required to determine whether any income was omitted. Plaintiffs have acknowledged under oath on their 1980 federal return that income was received. The only question is whether that income was received prior to plaintiffs coming to Oregon in February 1977. The court finds that plaintiffs have failed to carry their burden of proof. Defendant's Opinion and Order No. 85-0662 is hereby sustained and judgment will be entered accordingly. Defendant to recover its costs and disbursements incurred herein.

---

[3] In the normal course, a compromise agreement must be reduced to writing. *See Boulez v. Commissioner*, 76 TC 209 (1981).