Argued and submitted April 4, affirmed June 13, reconsideration denied July 13, 1989

# BROWN et al,
*Appellants,*

*v.*

# DEPARTMENT OF REVENUE,
*Respondent.*

## (OTC 2686; SC S35543)
778 P2d 950

Joseph Wetzel, Portland, argued the cause and filed the brief for appellants. With him on the brief was Wetzel & DeFrang, Portland.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, argued the cause for respondent. With him on the brief was Dave Frohnmayer, Attorney General, Salem.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiffs appeal from a judgment of the Oregon Tax Court affirming an assessment by the Department of Revenue for omitted income for the year 1980.[1] The assessment resulted after the department disallowed plaintiffs' exclusion from Oregon income of $235,000 they had reported on their 1980 federal return.[2] The issue is whether plaintiffs have sustained their burden to show by a preponderance of the evidence that they had not received the income in 1980.[3] The Tax Court found that plaintiffs had not sustained their burden and, therefore, sustained the department's order. *Brown v. Dept. of Rev.,* 11 OTR 61 (1988). On *de novo* review, ORS 305.445, ORS 19.125(2), we affirm.

We summarize the facts detailed in the Tax Court's opinion. James Brown[4] testified that from 1954 to 1974 he was employed in California in the aerospace and defense industries. In 1974 he purchased and operated a car upholstery business and he was engaged in the business of buying and selling houses. Also in 1974 he opened a massage parlor. That

---

[1] Plaintiffs' appeal to the Tax Court involved assessments for 1979 and 1980. The Tax Court sustained both assessments. Plaintiffs only appeal the judgment insofar as it sustained the 1980 assessment.

[2] Plaintiffs initially did not file a 1980 Oregon income tax return. Through an information-matching program with the IRS, the Oregon auditor discovered information that led him to conclude that they should have done so. They filed their 1980 Oregon return in 1982, excluding that $235,000 of their federal income from their 1980 Oregon income, explaining:

> "Taxpayer was audited by Internal Revenue in 1980. As compromise for unreported income in prior years, taxpayer included income item of $235,000, to report income unreported in years prior to Oregon residence. Taxpayer agreed to reporting of income in 1980 to minimize interest and penalities. Amounts of unreported income has previously been compromised with the State of California."

[3] ORS 305.427 provides:

> "In all proceedings before the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation."

During the years in question, ORS 316.048 provided:

> "The entire taxable income of a resident of this state is the federal taxable income as defined in the laws of the United States, with the modifications, additions and subtractions provided in this chapter."

[4] The Tax Court found that the business activities and events related herein pertain solely to James Brown. So far as the record indicates, Anne Brown is involved only by virtue of signing joint income tax returns.

venture was so successful that in three years Brown had expanded to seven locations which enabled him to accumulate over $200,000 in cash. He admitted that he kept his massage parlor profits at home in order to avoid paying taxes. The massage business, however, had its ups and downs and in 1976, Brown was convicted of pimping and pandering and sentenced to prison.

In 1977 after Brown was released from prison, plaintiffs moved to Medford, Oregon. Brown testified that he brought to Oregon over $200,000 in unreported cash from his massage parlor business and another $66,000 from the sale of a house. He invested in real estate and then became interested in mini-warehouses.

In 1979 Brown entered into a partnership with Harry O'Brien, whom he had known in California, to construct and operate a mini-warehouse. In September, 1979, O'Brien agreed to obtain some slot machines for Brown. O'Brien was to drive to Reno with his wife to pick up the slot machines and he agreed to purchase an ounce of cocaine for Brown while there. Brown testified that the slot machines and cocaine were for his personal use. At the last minute O'Brien's wife was unable to go, so Brown agreed to accompany him to Reno.

In Reno, Brown and O'Brien met with Clifford Lee, whom they had known in California. The three men went to a parking lot to transfer a U-Haul trailer with the slot machines from Lee's car to O'Brien's. Brown purchased an ounce of cocaine from Lee. While in this process, the three men were arrested by drug enforcement agents. Lee's car contained over 10 pounds of drugs which the agents believed Brown and O'Brien had sold to Lee. Brown was charged with interstate travel in aid of racketeering and distribution of amphetamines. He was convicted in January, 1980, and sentenced to prison. He remained there until May, 1980 when he was released on bond pending appeal with the condition that he personally and daily sign a police log sheet, which he did for two and one-half years. During his release pending appeal, Brown operated a mini-warehouse business, construction of which had been completed by his family while he was in prison. Eventually, Brown lost his appeal and served his sentence in a federal prison.

In 1979 the IRS conducted a "net worth theory" audit

of plaintiffs' federal returns.[5] On finding that plaintiffs had spent about $295,000 more in 1977 and 1979 than their reported income for those years, the IRS concluded that plaintiffs had underreported their income by that amount. Brown did not tell the IRS that he earned the money in California. He testified that he lied to the IRS, saying that it was from a loan. He also testified that he had received about $85,000 in 1979 from the sale of a house in California, and that he had not reported that income on plaintiffs' 1979 income tax return. Brown testified that, pursuant to a compromise agreement, the IRS auditor allocated $60,000 to tax year 1979 and allowed the Browns to claim $235,000 of the unreported income in 1980 because plaintiffs had not yet filed their 1980 return and they could avoid fraud penalties and interest by reporting it on that return. Plaintiffs identified the $235,000 on their 1980 federal return as "forgiveness of loan."[6]

Plaintiffs contend that none of the $295,000 discovered by the IRS had been earned or received while they were Oregon residents and, therefore, none of it is taxable by Oregon. They argue that the money had been earned and received in California before they moved to Oregon in 1977. The Tax Court agreed that if those are the facts, the challenged assessments must be cancelled. However, the Tax Court found that there was no evidence, other than Brown's word, that the IRS audit concerned years before 1977 when plaintiffs moved to Oregon and that it was more probable that the income was earned after they moved to Oregon.

Plaintiffs argue further that the $235,000 "forgiveness of loan" entry on their 1980 federal return only represents "prior years' income that the IRS permitted them to declare in 1980," but that the entry does not show that they had actually *received* $235,000 in 1980. Brown testified in the Tax Court that he had paid a "jeopardy assessment" in California for unreported income he had received before moving to Oregon, that the assessment had been for his unreported

---

[5] A "net worth theory" audit compares a taxpayer's reported or discovered income with the taxpayer's expenditures. *See Holland v. United States,* 348 US 121, 75 S Ct 127, 99 L Ed 150 (1954).

[6] Forgiveness of a loan is a realization or receipt of taxable income when the loan is forgiven, regardless of when the loan proceeds are actually received. 26 USC § 108(e)(1); ORS 316.048.

massage parlor income, and that the $295,000 reported on plaintiffs' 1979 and 1980 federal tax returns was part of that unreported California income which he brought with him when plaintiffs moved to Oregon in 1977.

The Tax Court found that Brown was not a credible witness[7] and that plaintiffs had failed to carry their burden of proving that they had not received the $235,000 in 1980. The court's opinion, however, included the following statement: "It seems unlikely that Brown, who was incarcerated for almost half of 1980 and closely watched the rest of that year, could have earned $235,000 in 1980." Plaintiffs interpret that language as a finding that they did not receive the money *in 1980.* Therefore, they argue, the Tax Court erred as a matter of law in upholding the department's assessment of that income for the *1980 tax year.*

Plaintiffs rely on ORS 316.037, which states in part: "A tax is imposed for *each* taxable year on the entire taxable income for every resident of this state." (Emphasis added). They argue that they may not be taxed *in 1980* for income they did not receive *in 1980.* They also argue that they only had to prove that they did not receive the income in 1980 and that the Tax Court's statement quoted above shows that they sustained their burden of proof on that point.

The Tax Court did *not* find that plaintiffs had not received the money in 1980. The court's statement that "[I]t seems unlikely that Brown * * * could have earned $235,000 in 1980" occurred in the context of the court's summary of the evidence. The Tax Court emphasized that plaintiffs themselves had declared the $235,000 on their 1980 federal tax return and that their signatures on that return declared under penalty of perjury that they had examined the return and to

---

[7] The Tax Court observed:

"His admitted course of conduct in California involved deceit as to his massage parlor business and evasion of income taxes. While residing in Oregon, he was convicted by a jury of dealing in amphetamines illegally. Although he appeared candid in his answers and testimony, he left the court unconvinced of critical points. For example, James contends that he did not earn the $296,000 in Oregon yet he did not tell the IRS agent that he earned it in California. Rather, he testified that he lied to the IRS agent and told him that it was from the forgiveness of a loan. He also testified that he had received approximately $85,000 from the sale of a house in California in 1979. This income was not reported by plaintiffs on their 1979 income tax return." *Brown v. Dept. of Rev.,* 11 OTR 61 at 64.

the best of their knowledge and belief "it is true, correct, and complete."

The Tax Court observed that plaintiffs' evidence consisted mainly of Brown's testimony, and that he was not a credible witness. Notwithstanding his testimony to the contrary, his 1980 federal conviction established that he had continued to engage in criminal activity for profit after moving to Oregon. That fact, the Tax Court found, tended to "indicate that the unreported income was earned while [plaintiffs were] in Oregon." Moreover, Brown admitted that he had wilfully concealed income from federal and state taxing authorities.

The Tax Court found it significant that plaintiffs had produced little evidence about their compromise agreement with the IRS. Although a compromise agreement is normally in writing, *see Boulez v. Commissioner,* 76 TC 209 (1981), they failed to produce a copy of any compromise agreement. Neither had they provided any proof that the money involved in the California "jeopardy assessment" was the same money at issue here. The department introduced the only written evidence as to California income taxes, which was simply a copy of a stipulation as to the amount of taxes owing and the dismissal of plaintiffs' appeal to the California Board of Equalization. The Tax Court concluded that plaintiffs had failed to sustain their burden to show that they had not received the $235,000 as Oregon residents in 1980. They did not prove that they had received the money in California before moving to Oregon in 1977, nor that they had received the money at any time *other than* in 1980.

In summary, plaintiffs reported the income on their 1980 federal return and swore that their return was true. We agree with the Tax Court, that plaintiffs have failed to sustain their burden of proof.[8] The decision of the Oregon Tax Court is affirmed.

---

[8] Although our scope of review is *de novo,* we accord some deference to the Tax Court's findings concerning a witness's credibility. The Tax Court has an opportunity to observe a witness under direct and cross-examination, while we review only a cold record.